JOHN H. ELDER, plaintiff in error, *vs.* ABSALOM OGLETREE, executor of JOSHUA ELDER, deceased, defendant in error.

NOTE.—WARNER, C. J., did not preside in this case.

Opinions of witnesses, other than subscribing witnesses to a will, unless in questions of sanity or insanity or those involving the admissibility of experts, are inadmissible as testimony.

If an ambiguity exists in a will made during the war, by the use of the word "dollars," and testimony has been admitted to show that, at the time of making the will, the currency where the testator lived consisted of Confederate Treasury notes, the value of such currency, as compared with gold, at the time of making the will, should be allowed to be proven, so as to enable the jury to collect the intention of the testator and render their verdict accordingly.

Assumpsit. Motion for new trial. Decided by Judge SPEER, Spalding Superior Court, February Term, 1867.

In August, 1863, JOSHUA ELDER, in said county, made and executed his last will and testament.

His bequests were as follows: Item 1st. Henry, Susan, Abbey and her two children, (slaves,) to his wife during life, and at her death, Henry to go to his daughter, Mary E.

Starr, and the heirs of her body, and Abbey and her children and their increase to his son Samuel.

2d. To said Samuel, George (slave), and one hundred acres of land described by metes and bounds.

3d. To James, his son, four slaves—Jane, Ciller and her two children—and a parcel of land described by metes and bounds.

4th. To his daughter, Nancy E. Hindsman, and the heirs of her body, Harriet, Anthony and Jordan, (slaves).

5th. To his daughter, Martha A. Molair, and the heirs of her body, certain lands therein described, and Tena, Malinda, Sherwood, Jack and Nathan, (slaves,) "by paying back $500.00 to the estate."

6th. To David P. Elder, Amanda, America, Emanuel, Abe, Mary, Harriet and Calvin, (slaves,) with their increase.

7th. To his son, John H. Elder, a parcel of land described therein ; "also six negroes, Caroline and her children, Jerry, Wood, David, and little Tiner, with all their increase, he paying back $500.00 to the estate."

8th. To his wife the remaining lands during life ; remainder to James, upon condition that he take care of his mother during her life ; also furniture and various articles of personalty to be used by his wife while living, and at her death to be sold, and proceeds equally divided amongst "the children."

9th. The remnant of his property to be sold, and proceeds, after reserving $150.00 to build a rock wall at the graveyard where he wished to be buried, to be equally divided between the children of Elizabeth R. Starr.

10th. All the money and notes of testator to be divided between the children last aforesaid as they arrive at age. John H. Elder appointed guardian for Benjamin M. Starr and Martha E. Starr.

11th. To his grand-son, Joshua H. Starr, $300.00, and to his grand-daughter, Martha E. Manly, $500.00 at his death.

12th. To James Coleman, Sr., to live on and cultivate the land on which he now lives and which he now cultivates as long as he wishes ; and when he dies or abandons the same,

then the land to belong to the testator's son, James R. Elder.

13th. Absalom Ogletree and Robert B. Anderson are nominated as executors.

Joshua Elder died, and Ogletree became his executor. As such executor Ogletree sued John H. Elder, alleging that, on the first day of January, 1865, said John H. being one of the legatees under said will, and having by said will bequeathed to him land worth $2,000.00, which is more of his estate than testator intended for said John H.; said John H. elected and desired to possess the said land and pay the $500.00 (which by the 7th Item of the will is made a charge upon it,) and then and there demanded of said executor and recovered possession of said land under said clause of the will, whereby said John H. became liable to pay said executor said $500.00, etc.

The defendant plead *non assumpsit*, and that said will was made during the late war, when Confederate Treasury notes was the only circulating medium, and testator, in charging said legacy with the payment of said $500.00, meant and intended that the same should be paid in said currency, which was then greatly depreciated, and plaintiff should not have more than the specie value of said $500.00 in such currency: and further, that testator having intended this $500.00 to be paid only in said currency, and said currency having ceased to be a circulating medium, there should be no recovery.

At the trial, after the will had been read in evidence, the plaintiff examined as a witness R. B. ANDREWS. Andrews testified that he knew the land mentioned in said 7th Item; that defendant took possession of it soon after testator's death, and had had it ever since; that defendant rented part of said land from the executor, and another part of it was rented to another person in 1864, and in 1865 defendant rented said land to freedmen; (witness did not know how defendant held the land;) that defendant also hired the negroes given him in 1864 from the executor; that there was no distribution of the property under the will, and the land is worth about $5.00 or $6.00 per acre, and there are probably about one hundred and forty acres of the land; that the

oldest field was rented at $9.00 per acre in 1864, in Confederate money; that since the war, the land would not have rented for more than half what it rented for before; that Confederate money was generally in circulation when the will was made; that witness wrote the will; that testator died 28th August, 1863; that all the legatees got possession of the land and negroes given to them; that there was a contest about the will, and the executor hired out the negroes and rented the land for one year to the legatees; after that year (1864), they took charge of them in 1865 as their own, and exercised acts of ownership over them till the negroes were set free, but that he did not know under what kind of an agreement they took and held them.

Plaintiff proposed to prove by this witness the instructions and directions of testator to him at the time of making the will. This was objected to, because, as it was said, there was no such ambiguity in the will as could be explained by parol testimony, and because testator's sayings could not bind defendant, as he accepted the legacy, if at all, under the written will.

The Court said he would admit the evidence, as defendant had proved that Confederate money was in general circulation when the will was executed.

The witness then testified that in giving directions about drafting the will, testator said nothing about what kind of currency was to pay this charge of $500.00; that testator said that he had intended to give Mrs. Elizabeth Starr's children $500.00, but as it was uncertain what the money would be worth, as everything was so uncertain, that he would give them what his perishable property sold for, less said $150.00; that testator always meant what he said, and said what he meant; when he said a dollar he meant a dollar: it is therefore my opinion that it was his intention that this charge should be paid in good money. Upon cross-examination, defendant, it being shown that Confederate money was the currency when the will was made, proposed to prove its value at that time. Plaintiff objected, and the Court sustained the objection, remarking that if defendant could prove

that testator intended that the charge of $500.00 should be paid in such currency, then he would admit the evidence.

Plaintiff then examined JOHN H. STARR, who testified that the said land was worth $6.00 or $7.00 per acre; that John H. Elder had the negroes given him from the executor for the year 1864, and rented the lands and kept possession of the negroes and land after 1864, then gave them up to the legatees; that John H. exercised acts of ownership over them, but under what agreement with the executor, witness did not know. In 1865, John H. Elder hired one of the negroes to Manly, and exercised acts of ownership over the land; that witness caveated the said will, and afterwards settled with the executor; that the executor gave up the property to the legatees 1st January, 1865, (witness was not present at the delivery,) under what agreement witness did not know, but from that time the legatees controlled the negroes as their own; that said will was not finally set up till November, 1865.

The verdict was for $500.00, with interest and costs.

Defendant moved for a new trial on the following grounds:

1st. Because the declaration states that in consideration that defendant would and did accept voluntarily a legacy under said will, it being a tract of land, defendant undertook and promised, etc., when the proof showed that the consideration mentioned was a tract of land and six slaves, and there was no allegation or proof that said negroes were ever turned over as a legacy under said will.

2d. Because the Court erred in not allowing proof of the value of Confederate money.

3d. Because the Court charged that if the jury, from the evidence, believed that the defendant had elected to take the legacy under the will, and it had been paid and turned over to the defendant under the will as a legacy, then defendant was bound by his election, and the plaintiff might recover; and the jury, without evidence, and contrary to the charge of the Court, found said verdict.

4th. Because the Court erred in holding and in charging the jury that the facts and statements of the will of Joshua Elder constituted a case of election.

5th. Because the Court erred in permitting the plaintiff to prove what the testator said to the writer of his will as to testator's instruction as to what kind of money defendant should pay under his election, and holding that defendant was bound by the intention thus expressed, whether this intention appeared in the will or not, the Court holding that the will contained such an ambiguity as would allow parol testimony, to explain such ambiguity between plaintiff and defendant in this case.

6th. Because the jury found a verdict against the defendant contrary to the evidence in the case, contrary to the charge of the Court, and without any allegation in the declaration to authorise such verdict or testimony to sustain it.

7th. Because the Court erred in giving his opinion as to the testimony of R. B. Andrews, as to what he proved, to-wit: the Court said the testimony of the witness (to the effect that testator in giving instructions to the prothonatory, said he had intended giving Elizabeth Starr's children $500.00, but everything was so uncertain, and the money declining in value, he had concluded to give them what the personal property sold for), proved anything else than that he intended this charge to be paid in Confederate money ; and again refused to permit the defendant to prove the value of Confederate money.   (The Court says this remark was not addressed to the jury, but to counsel, in giving to them a reason for rejecting the evidence.)

8th. Because the Court erred in stating in presence of the jury that this will contained a latent ambiguity, and that therefore he would hear parol testimony to explain it.   (The Judge certifies that he held it contained such ambiguity, upon the motion of defendant's attorneys to allow such testimony, they contending that it contained such ambiguity, from the condition of the country and currency when the will was made.)

9th. Because the Court erred in refusing to allow defendant to prove the value of Confederate money after the plaintiff had closed his case.

The record does not show what was the charge of the Court, nor is there any certificate, otherwise than as aforesaid, that the statements in the motion for new trial are true. The Court refused a new trial, and this refusal (on said grounds) is assigned as error.

BOYNTON & DISMUKE,  } Attorneys for plaintiff in error.
N. W. HAMMOND & SON, }

PEEPLES & STEWART, attorneys for defendant in error.

HARRIS, J.

The ordinance of the Convention, in November, 1865, applies in terms to contracts unexecuted (within two named periods) and were it to be strictly construed, no evidence whatever touching wills and other transactions, which do not technically fall within the denomination of contracts, as to currency, its value &c., could be admitted. Its spirit and intention was to include all transactions involving money or its representative, and to ascertain the truth of every agreement or design. And hence, as the defendant below was allowed to prove that, at the time of the making of the will, Confederate treasury notes was the prevailing currency, we think that the Judge erred in not permitting their value in market at the residence of testator to be given in testimony.

It is palpable, in considering closely the ordinance, that the Convention must have deemed the expression "dollars" in notes, accounts, etc., to be ambiguous in meaning, as carrying a doubt along with it as to what was meant, currency or gold and silver, or they would not have permitted the wide range they have in trying to arrive at the truth of every transaction at the time of it, and what was intended. We would not be understood as saying that because a depreciated currency had supplanted a better one, the worst was meant. Far, very far from it. We leave this to be settled upon testimony, positive or circumstantial, by the Jury. The many clauses of the will, the various sums of money to be paid to legatees so as to adjust and equalize their shares, (it being the general presump-

tion that such is the wish of every parent, unless the contrary is distinctly exhibited) furnish means from which an intelligent jury can collect, with pretty great certainty, what the testator meant, whether he meant gold or currency.

There was error in suffering Mr. R. B. Andrews, who was not a subscribing witness to the will, to give *his opinion* as to what testator meant. The fact that he was the amanuensis in drafting the will, does not, under the rules of evidence now existing, sanction his giving *his opinion;* he can testify as to facts only.

Judgment reversed.